**Myrtle Black, Plaintiff-Appellant, v. Othello DeWitt, Defendant-Appellee.**

Gen. No. 49,596.

First District, First Division.

January 25, 1965.

Knell & Lezak, and Morton A. Resnick, all of Chicago, for appellant.

Beverly and Pause, of Chicago (Robert O. Duffy, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from a not guilty verdict and judgment in her personal injury action and seeks a new trial, asserting that the verdict was against the manifest weight of the evidence, and that prejudicial errors were committed in a cross-examination of one of plaintiff's witnesses, a State Trooper.

On July 12, 1958, while a passenger in the front seat of an automobile operated by Jerry Barbee, the plaintiff, Myrtle Black, was injured when Jerry Barbee's car collided with an automobile owned and operated by defendant, Othello DeWitt. Plaintiff subsequently married Jerry Barbee. He was voluntarily dismissed as a plaintiff, and he did not testify at the trial.

Plaintiff testified that on July 12, 1958, at approximately twelve o'clock midnight, after she had finished working, she and Jerry Barbee left Chicago, drove to the Indiana Dunes State Park, arriving there about 2:30 a. m., intending to go swimming and have a picnic. They found the park was closed and

222

and would not open until 6:00 a. m., so they drove east on Route 20. It was raining, the windshield wipers were on, and visibility through the windshield was good. Plaintiff stated, "We were in the lane closest to the curb. I was looking away from the car trying to see a restaurant on my right. My window was halfway down. I could see the shoulder of the road . . . . We were going 30–35 miles per hour, it was misting and raining. . . . I did not see any headlights before the accident and Mr. Barbee didn't call a warning or say anything. When I saw the viaduct I didn't see any lights. I don't remember talking to the policeman after the accident. . . . I woke up three days later in the hospital on the operating table."

Othello DeWitt, called by plaintiff under section 60 of the Civil Practice Act, testified he was traveling to Chicago and was operating his automobile in a westerly direction in the inner of two westbound lanes on Highway 20, at about 40 to 45 miles per hour. "There's a rise and a turn to the right when you come out of the viaduct to proceed into, I would say, Gary is the next big town. And, as I came out of the rise, headlights came across my vision, and I considered to avoid the headlights that were approaching and blinding me, I very slightly—to avoid it. And I knew no more until I woke up in the hospital. I do not remember going across three lanes into the eastbound lanes." Before the collision he applied his brakes "slightly," and did not recall skidding. He further said, "To my knowledge the accident happened in the westbound lane, when I lost the picture of it. That's all I remember. I was over in my west lane." He did not recall talking to "the State Troopers."

State Trooper Lewis, a post-occurrence witness for plaintiff, testified he made an investigation of the collision, and "I brought the original report with me

that I made at the scene of the accident. I talked to the two drivers. I talked specifically to a person by the name of Othello DeWitt . . . in the Doctors' Hospital in Michigan City, probably an hour or a little better than that after I arrived at the scene. . . . He advised me that it was raining and that his car went into a skid on the wet pavement, and that he crossed over into the eastbound lane of traffic and struck vehicle number 2. I looked for debris on the highway at the scene of the accident and found debris right at or near the center line that runs between the two eastbound lanes." On cross-examination, the Trooper stated that when he arrived at the scene, the DeWitt vehicle "was completely off the right or north side of the road for the vehicle that had been westbound. There was dirt and debris on the pavement. There was physical evidence on the pavement to let me determine where the accident occurred. I didn't see any skid marks."

When defendant's counsel further cross-examined Trooper Lewis for impeachment purposes, the alleged prejudicial trial errors occurred. These are discussed later.

■ Considering, first, the contention of plaintiff that the verdict of the jury was contrary to the manifest weight of the evidence, it is agreed by plaintiff "that a reviewing court will not disturb a verdict unless the evidence is so clear and convincingly contrary to the jury's verdict that it is apparent that the jury's verdict was palpably erroneous." Plaintiff argues that the evidence indicates, "clearly and unmistakably, wherein the manifest weight of the evidence lies. The opposite conclusion from that which the jury found is certainly clear and convincing." In support of this premise, plaintiff cites her testimony that her car was near the shoulder of the road and did not leave it, supported by the testimony

of Trooper Lewis as to the location of debris on the highway, and the alleged admissions of defendant that "it was raining and that his car went into a skid on the wet pavement," and that "he crossed over into the eastbound lane of traffic and struck vehicle number 2."

In contradiction to the foregoing, defendant argues that his testimony is positive and affirmative in that "he was operating his vehicle in a westerly direction in the inner westbound lane of Highway #20 when he saw lights come over towards his car; that he was in the westbound lane when the accident occurred." Defendant asserts that the testimony of the State Trooper, as to admissions purportedly made by the defendant, was substantially impeached and should be disregarded.

We believe the principles to be applied here, in the absence of prejudicial trial errors, are well set forth in Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 147, 72 NE2d 705 (1947):

> " 'There are many things which a jury observes on the trial in such case that do not appear from the printed record—the appearance of the respective witnesses, their manner of testifying and a great many other circumstances. They are in a much better position in such case to determine the truth of the matter in controversy than a court of review.' . . . Under the law we cannot disturb the verdict of the jury unless it is clearly against the manifest weight of the evidence. Manifest means clearly evident, clear, plain, indisputable."

■ Considering the meager testimony as to the facts of the collision in this case, and the direct conflict between the plaintiff's and the defendant's testimony as to the position of each car immediately prior to the occurrence, we are not persuaded that the

testimony of the Trooper as to the alleged admissions of defendant, and as to the location of debris, is sufficient to show that this is a case in which an opposite conclusion to that of the jury is clearly evident, as is required before this court can disturb the verdict. Griggas v. Clauson, 6 Ill App2d 412, 419, 128 NE2d 363 (1955).

The alleged trial errors, asserted by plaintiff to be prejudicial, occurred during the cross-examination of the State Trooper. He was questioned about making a statement in the police station at Chesterton, Indiana, on February 6, 1961. He did not deny such a statement, but he didn't remember it. He was then asked, "At any time in the past, were you asked this question and did you make this answer to that question: Question. Could you give us an idea if there was any evidence of the impact on the pavement itself? Answer. No, I didn't notice any. The two drivers stated it happened more near the center line." Upon answering that he did not recall this question and answer, he was then questioned about a report made by him after he had completed his investigation of the occurrence. He was asked, "Didn't you indicate on that report that Mr. DeWitt was not guilty of improper driving?" The court sustained plaintiff's objection to this question and denied plaintiff's motion for a mistrial. The jury was instructed to disregard the question and its implications. The Trooper was further questioned as to whether he noted in his report, in a box provided for the answer, "that Mr. DeWitt told you that he was on the wrong side of the road . . . . Of course you checked that box for Mr. DeWitt did you, sir?" and the Trooper replied, "No, I didn't." Objections were sustained to further questions as to how he completed the report as to "slick road conditions and light rain falling" and listing "traffic violations." On redirect, the court

sustained defendant's objections to plaintiff's question, "Do you remember Trooper Lewis telling anyone at any time after this occurrence that Mr. DeWitt admitted to drinking?"

■■■ Plaintiff argues that the questions asking for parts of the police report created questions in the minds of the jurors, which were prejudicial to the plaintiff, and a mistrial should have been granted. Plaintiff cites authorities to show that insistence that a police report be received into evidence has been repeatedly condemned. (Smith v. Johnson, 2 Ill App 2d 315, 319, 120 NE2d 58 (1954).) We agree that this practice is improper. However, any statement, oral or written, of a witness as to a material matter, inconsistent with his testimony on the trial, may be used to impeach him. (37 ILP, Witnesses, § 222.) We believe this rule extends to police reports. Where the maker of a report testifies inconsistently with his written report, the witness may be questioned about the inconsistencies, subject, always, to the sound discretion of the court. We consider the attempts to show that the report was inconsistent with the witness' testimony on trial, as to defendant's admissions and location of debris found on the pavement, were proper. Although questions as to what the report contained as to previous "driver's violations" were improper, we do not consider this impropriety to be of such substance as to be prejudicial to the rights of plaintiff. Kosowski v. McDonald Elevator Co., 33 Ill App2d 386, 396, 179 NE2d 469 (1962).

■■ Plaintiff's final contention is that in examining the court reporter about the statement of the State Trooper taken on February 6, 1961, "it was unfair and prejudicial to deprive opposing counsel of the opportunity of examining the statement in its entirety and denies him the opportunity to determine whether or not there were qualifying or modifying questions

227

and answers submitted in that same statement." We find no error here. The court reporter, who took the statement, testified from her original notes. The record does not show that plaintiff made any serious attempt to properly question her about any other portions of her notes which might have contained qualifications or modifications to the statement about which she was being examined. Defendant was not required to bring into court a transcript of the statement for use of opposing counsel, when there existed ample opportunity for plaintiff's counsel to examine the reporter, testifying from her original notes, as to the contents of such statement.

We are not persuaded that counsel for either side has fairly portrayed or argued the record in this case, but we conclude that the instant trial was free from prejudicial trial errors and that the judgment was not contrary to the manifest weight of the evidence.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.