**Helen Whitman, et al., Plaintiffs-Appellants, v. George Prescott, Defendant-Appellee.**

**Gen. No. 50,558.**

First District, First Division.

February 6, 1967.

49

Harry P. Hutul, of Chicago (Arthur M. Gorov, of counsel), for appellants.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard, Reese Hubbard and Frederick W. Temple, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The plaintiffs brought this action to recover for personal injuries and property damage which they sustained when the automobile driven by plaintiff, Helen Whitman, in which plaintiffs, Julia Osolinski, Myrtle Berry and Lottie Kaczor were passengers, collided with an automobile driven by the defendant, George Prescott. The jury trial resulted in a verdict of not guilty and the plaintiffs appeal from the judgment entered in favor of the defendant. No question was raised as to the pleadings.

On January 6, 1958, the plaintiff, Helen Whitman, picked up the other three plaintiffs, and taking the same route they used every day, was driving to the Automatic Electric Company in Northlake, Illinois, where they were employed. Helen Whitman testified that she was driving west on Grand Avenue in the second lane of the six-lane through street at about 20 to 25 miles per hour and when she was about 20 feet east of Nordica Avenue she glanced and saw the defendant's car going south on Nordica and expected him to stop for the through street. When she was about ten feet away, she said, she saw he wasn't going to stop and yelled, "He isn't stopping," applied her brakes, blew her horn, swerved to the left, and that the defendant's front left fender hit her right fender. She testified further that the defendant did not blow his horn

or swerve his car to avoid the collision. The testimony of her three passengers and coplaintiffs was substantially the same.

The defendant, George Prescott, testifying under section 60 of the Civil Practice Act, said that he was on his way to work and knew that traffic on Nordica must stop before entering Grand Avenue which was a through street. He said that he was stopped several times on approaching Grand Avenue because cars in front of him were turning into it and that when traffic cleared he proceeded 15 feet into Grand Avenue where his engine stalled. He testified that he had just restarted his engine and that his car was standing still when the other car, which he saw shortly before the impact, struck his left bumper. He said the other car then swerved slightly to the left and came to a stop about ten feet away and that his car was not moved by the impact.

■■ Plaintiffs contend that the misconduct of defendant's counsel so prejudiced the jury that they rendered a verdict clearly against the manifest weight of the evidence. They argue, and we agree, that where the question of liability is sufficiently close, as in the instant case, the trial must be conducted in an orderly manner so that the jury will not be improperly influenced. Bulleri v. Chicago Transit Authority, 41 Ill App2d 95, 190 NE 2d 476, Owen v. Willett Truck Leasing Corp., 61 Ill App2d 395, 209 NE2d 868. Therefore errors in the course of the trial should be carefully scrutinized by the court.

We first consider plaintiffs' claim that defendant's attorney was guilty of misconduct in persistently asking objectionable questions of several witnesses with regard to injuries and ailments of Mrs. Berry not connected with the accident in question. Mrs. Berry testified that the collision on January 6th threw her into the windshield and that she was put under the care of Mrs. Whitman's doctor who was on the staff of the American Hospital. At that time she said that her whole right side and neck

hurt and that she was confined to the hospital until January 27th, during which time she couldn't walk. She returned to work about March 17th, and was subsequently hospitalized in November of 1963, for, as stated in plaintiffs' brief, an unrelated condition.

We are of the opinion that no useful purpose would be served by detailing the many further charges. We have carefully reviewed the 900-page record of the nine-day trial and it appears to us that counsel for defendant was attempting to show through witnesses and exhibits that most of the injury claims by plaintiffs were fabricated. During the cross-examination of Mrs. Berry the trial judge ruled, on motion of plaintiffs, that her hospitalization for pneumonia and female illnesses were irrelevant and the jury was to disregard such evidence. The record is replete with bickering and wrangling by both counsel when defense counsel attempted to question Mrs. Berry and other witnesses about her many and various ailments both before and after the occurrence; counsel for the plaintiffs objecting that it was irrelevant and defense counsel insisting that it was either for the purpose of impeachment or for recollection of the witnesses.

During the last stages of the trial the defense called Dr. Arthur Jackson, who had treated Mrs. Berry for "nervousness" in February of 1961. Continued objections were made by plaintiffs' attorney on questions put to him on grounds of hearsay and irrelevancy and were sustained and the jury instructed to disregard the answers. Counsel for defendant insisted he was trying to refresh the recollection of the witness from hospital records and to connect his testimony with other evidence already given for purposes of impeachment. When the trial judge requested defense counsel to get to the point, counsel replied, "I am trying to ask those questions but counsel keeps interrupting and raising frivolous questions and I never get to communicate with the witness."

Plaintiffs' counsel objected to this statement by defense counsel that he was interrupting and raising frivolous questions. A colloquy then took place between the court and counsel in chambers where counsel of plaintiffs moved for a mistrial. After much discussion the court stated that at that stage of the case he was reluctant to grant the motion, but he thought that the only way to settle this dispute was to grant a mistrial unless counsel got together. The following exchange between counsel then occurred:

> Mr. Hutul: I don't know whether there is any way it can be settled unless he apologizes in open court and you instruct the jury that it was not frivolous.

> Mr. Kaye: I cannot do that.

> Mr. Hutul: I will move that this court instruct the jury that such a remark is not in keeping with proper court conduct.

> Mr. Kaye: All right. I will go out there and withdraw the remark I made.

The colloquy continued and then counsel for plaintiffs stated the understanding reached as:

> Mr. Hutul: And the jury will be instructed to completely disregard the colloquy with counsel. That it has nothing to do with the trial of this lawsuit? And you are denying my motion for a new trial?

> The Court: Right.

Mr. Kaye insisted that he was entitled to refresh the memory of the witness when his recollection was exhausted and Mr. Hutul insisted the evidence was inadmissible because it was hearsay. The parties returned to the court and the following took place:

> Mr. Hutul: Will the court please instruct the jury with respect to our instructions?

54

> The Court: I am going to ask counsel for the defendant to make a motion to withdraw the remark that he made before the jury.
>
> Mr. Kaye: Yes, your honor, I withdraw the remark I made before the jury.
>
> Mr. Hutul: Will the Court instruct the jury to disregard this remark?
>
> The Court: The jury will so disregard the remark counsel for defendant made against counsel for the plaintiff.

Plaintiffs further complain that the inflammatory conduct in defense counsel's closing argument to the jury was so prejudicial as to require a reversal citing Westbrook v. Chicago & N. W. Ry. Co., 248 Ill App 446, 451, where it was stated that, "where the conduct of counsel is inflammatory and prejudicial, the judgment will be reversed even though the verdict is not against the manifest weight of the evidence."

During Mr. Kaye's closing argument Mr. Hutul objected to certain remarks as being improper and argument between counsel ensued. Later Mr. Hutul objected that Mr. Kaye was referring to an exhibit excluded from the evidence and the following exchange ensued:

> Mr. Hutul: Objection, your honor. He is referring to an instrument that the Court saw fit to preclude from this jury's attention, an exhibit.
>
> Mr. Kaye: It was not offered in evidence, your honor, and I am referring to testimony of Mrs. Hartman.
>
> Mr. Hutul: I will offer those exhibits right now, if you make such a challenge, and if you will stipulate, I am sure the Court will let it in.
>
> Mr. Kaye: Very well. On the basis of that prejudicial misconduct, I will now move for a mistrial.

Mr. Kaye accused Mr. Hutul of threatening to reopen the case without leave of the court and put in evidence an inadmissible document and asked the court to declare a mistrial. The court ruled against this motion stating:

> The Court: I think we better proceed. The jury will disregard the statements that have been made. But as I said before, confine yourselves to matters that actually took place when this witness was on the stand. And I want counsel for the Plaintiffs to be fair about his objections.

Later in his argument Mr. Kaye told the jury that if they believed that his client is a suicidal maniac to go driving into Grand Avenue into heavy traffic in both directions then their verdict should be for the plaintiffs. The following then took place:

> Mr. Hutul: I must object. There is nothing in the law that says that this man, the defendant, must be a homicidal maniac for the plaintiffs to recover.
>
> The Court: Cease using those words.
>
> Mr. Hutul: He is telling the jury that is the test for determining the capability and I respectfully request that that remark be stricken.
>
> The Court: It is an unfair comment.
>
> Mr. Hutul: An unfair comment? That is, my comment is unfair? Is that the statement?
>
> The Court: Well, the statement made by counsel for the defendant is rather unfair.

The defense counsel then asked for a mistrial in view of the court's own remark which was overruled. After completing his argument, Mr. Kaye renewed his motion for a mistrial in chambers on the ground that the court had admonished him before the jury as doing something im-

proper and they therefore would be prejudiced against him and his client. The judge overruled his motion and counsel for the plaintiffs proceeded with his rebuttal.

We do not think it necessary to recite further details in this opinion. We have considered all arguments made and we find the ultimate question to be not whether the trial was scrupulously free from error, but whether error occurred which unduly affected the jury's verdict. Prejudice must be clearly shown to require a reversal and new trial. LaSalle Nat. Bank v. Wieboldt Stores, Inc., 60 Ill App2d 188, 208 NE2d 845.

The record shows that the trial judge earnestly attempted to conduct the nine-day trial in all fairness to both sides. Objections were promptly ruled on and the jury was adequately and properly instructed. The judge admonished both attorneys about their conduct during the trial. On two occasions the defense attorney moved for a mistrial and the trial judge indicated that if both sides wished a mistrial he would grant it. Counsel for plaintiffs had opportunities to make such a request if he thought plaintiffs were prejudiced. He elected not to take advantage of such a course and permitted the matter to go to the jury. See LaBelle v. Brown (Abstract) 46 Ill App2d 87, 196 NE2d 389.

The resulting jury verdict found the defendant not guilty of negligence. After considering all the circumstances in this case, we find no convincing reasons to conclude that the verdict of the jury was the result of defense counsel's misconduct nor the result of passion and prejudice created by the actions of defense counsel.

The plaintiffs also contend that the verdict of the jury was contrary to the manifest weight of the evidence. They argue that in addition to the fact that the defendant is contradicted by the four plaintiffs the four photographs of the automobile clearly indicate that the occurrence could not have happened in the manner testified to by the defendant.

The law is well settled in Illinois that a reviewing court cannot substitute its judgment for that of a jury in passing on the weight of the evidence. The trial judge who saw and heard the witnesses may, in his sound discretion, grant a new trial if the jury's verdict is contrary to the preponderance or weight of the evidence. Lukich v. Angeli, 31 Ill App2d 20, 175 NE2d 796. The trial judge declined to grant a motion for a new trial. A reviewing court may overturn a jury's verdict only if it is contrary to the manifest weight of the evidence. By manifest weight is meant the clearly evident, plain and indisputable weight. Black v. DeWitt, 55 Ill App2d 220, 204 NE2d 820.

The photographs in evidence were examined and considered by the jury and the trial judge in reaching their decisions. We also have examined the photographs and cannot say from such examination that the collision could not have happened in the manner testified to by the defendant. The other evidence also clearly indicates substantial conflict as to the cause of the collision. Plaintiffs' version was that the defendant failed to stop at Grand Avenue which was a preferential through street and ran into their car. According to the defendant he stopped his car at Grand Avenue because he was familiar with the fact that there was a stop sign for traffic entering into Grand. He also said his car was stalled for a short period about 15 feet into Grand Avenue and was standing still when it was struck by plaintiffs' car. There were no disinterested eyewitnesses to the occurrence.

The jury determines the credibility of witnesses, and it is evident that this jury disbelieved the version of the plaintiffs as to the occurrence. Such a verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless an opposite conclusion is clearly evident. Brayfield v.

Johnson, 62 Ill App2d 59, 210 NE2d 28. We cannot say that such a conclusion is evident.

For the reasons given, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.