**Harry McIntyre, Plaintiff-Appellee, v. The Belt Railway Company of Chicago, a Corporation, and Peter Hanik, Defendants-Appellants.**

Gen. No. 52,249.

First District, First Division.

January 13, 1969.

Richard F. Koproske and Glen H. Carrier, of Chicago (Glen H. Carrier, of counsel), for appellant.

Horka & Lindell, of Chicago (Charles E. Lindell and Manuel Rosenstein, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

Harry McIntyre, plaintiff, brought this personal injury action to recover damages occasioned by the alleged negligence of the defendant, The Belt Railway Company of Chicago, in the operation of its diesel switch engine at a railroad crossing at grade. Defendant, Peter Hanik, was dismissed as a party to the cause after the jury was selected. The jury rendered a verdict for the plaintiff, upon which the court entered the judgment from which this appeal is taken. No questions are raised on the pleadings.

The plaintiff, Harry McIntyre, was injured on April 24, 1961, at about 7:00 p. m., when his automobile was struck by defendant's switch engine at a railroad grade crossing near 67th Street and Lavergne Avenue, in the Village of Bedford Park, Illinois. Plaintiff had left his gasoline station, at 7400 South Cicero Avenue, drove North on Cicero to 67th Street, turned left and went West on 67th Street to Lavergne, a distance of about two blocks. At Lavergne there is a stop sign and a railroad cross-

buck sign. Plaintiff stopped his automobile and then proceeded to turn right to go Northbound on Lavergne. There is a railroad crossing consisting of four sets of tracks crossing Lavergne at right angles in an East and West direction. As one travels Northbound on Lavergne, the first set of tracks is approximately ten to fifteen feet North of 67th Street. The second set of tracks is approximately fifty feet North of 67th Street. The third set of tracks is about five feet North of the second set of tracks, and the fourth set of tracks is about ten feet further North of the third set. Both the second and third set of tracks originate in a factory on the East side of Lavergne Avenue, and each set emerges from a different entrance.

The area where the accident took place is predominately industrial and commercial, with factories on both sides of Lavergne Avenue. The defendant's diesel locomotive involved in this collision was being operated on the third set of tracks, and was emerging in a backward direction from the factory entrance on the East side of the street. As the defendant's locomotive emerged from the factory, it was at first heading directly South, then the third set of tracks curves to the West, and by the time the locomotive emerges from the curve to the West, it is heading almost due West as it reaches Lavergne Avenue. The weather conditions that evening were poor— it was very dark and cloudy, and it was raining. There were no street lights at the intersection of 67th and Lavergne. There were no lights in the area of the third set of tracks crossing Lavergne Avenue, nor any lights emerging from the factories. There were no crossing gates, flashing lights, flagmen or guard towers, where the tracks cross Lavergne Avenue, nor were there any pedestrians present at the time of the collision.

As the plaintiff turned to go North on Lavergne, he was following a line of approximately twelve cars going in the same direction, and he was followed by about the

same number. Plaintiff was traveling about five to ten miles per hour as he approached the third set of tracks. He saw only the headlights of cars going North and South across the tracks. When the front portion of plaintiff's automobile was on the third set of tracks, his vehicle was struck on the right side by the defendant's locomotive. Members of the locomotive crew testified that the locomotive was traveling two to four miles per hour; that the bell was ringing; that the headlight was on bright; and that the engineer blew the whistle several times as they approached the crossing. All five members of the locomotive crew were riding on the locomotive at the time of the collision.

The evidence adduced by plaintiff at the trial concerning the collision disclosed that he was familiar with the crossing, since he had traveled over the railroad intersection over one hundred times in the past, but had never seen a train or locomotive operating on the tracks prior to the accident. Because it was raining, all the windows of his car were up. The windshield wipers were on as well as the defroster and heater. He heard no bells, whistles or horns, nor saw any flashing lights, and when he reached the third set of tracks he was struck by something "like a ton of bricks." Plaintiff was dazed and did not recall what happened next. When he awoke, he was in the hospital.

On cross-examination, plaintiff testified that the muffler of his car was defective and that it made a purring sound. Defense counsel impeached the plaintiff as to the condition of the muffler as follows:

"Q. Would you admit that the muffler was noisy that night?

"A. Not so noisy that I couldn't hear a train. As a qualified mechanic I would say it was more like a purr than a roar. . . .

"Q. You mean your muffler purred?

"A. It had a little pin hole in it. . . .

"Q. I see. Calling your attention to this deposition that you gave . . . I will ask you if this question was asked and if this answer was given:

"'Q. During the period of time then that you moved from track No. 2 to track No. 3, did you look to your left or to your right?

"'A. I was looking to my left. I heard—got a, got a noisy muffler on the car because the muffler was shot. So the muffler was making noise and I could hear loud factory noises.'

"Q. Was that question asked and that answer given?

"A. Yes."

Plaintiff continued to testify that the lights of his automobile did not flare out to illuminate peripheral areas but that they were set to illuminate the area directly in front of the automobile. Plaintiff stated that he looked both ways before crossing the third set of tracks but could not see out the right-hand door windows because of the rain. Again, plaintiff emphasized that he saw no locomotive or locomotive headlight; nor heard any horn, whistle or bells, and that he was following other cars over the tracks at about five to ten miles per hour and at no time applied his brakes to stop his vehicle. This was the extent of the evidence plaintiff produced as to the accident. Defendant's motion for a directed verdict at the close of plaintiff's case was denied.

Defendant presented the testimony of three of the crew of the locomotive, which in summary was that the locomotive had made a switching operation at one of the factories in the area and was backing upon the third set of tracks. The engineer sounded his whistle for the crossing, the engine bell had been ringing since they left the factory building area, the engine headlight

was on bright, directed towards the crossing area, and there were lanterns on the engine at the time. The locomotive was traveling about two to four miles per hour around the curve and there was no obstruction to the view as they approached the crossing, although it was raining and very dark. The brakes of the locomotive were applied immediately before the collision. Harry Meritt, the fireman on the locomotive, also testified the southbound traffic had stopped. At the time of the impact all five crew members were on the locomotive, three were in the cab, one was at the head of the engine and one at the rear. At the time of the trial, the engineer, Mr. Haney, had passed away.

It is Belt's theory that the plaintiff failed to show any negligence on the part of Belt that was the proximate cause of his injuries and that the plaintiff failed to prove due care on his part which makes him guilty of contributory negligence as a matter of law.

We note that plaintiff did not offer any eyewitnesses to this accident. In addition, there was no evidence presented by plaintiff concerning the negligent operation of the locomotive; no evidence as to the speed of the train; and no evidence that defendant negligently operated its locomotive into the plaintiff's automobile. There was no testimony that the crew of the locomotive was negligent and by the plaintiff's own testimony, he did not see any flashing light, or anything else, when he looked to the right when crossing the third set of tracks because of the misting rain and the poor visibility through the wet window. Inside plaintiff's automobile, the defroster and heater were turned on and the windshield wipers were operating. With a defective muffler also contributing to the noise level and as plaintiff stated the noise from the adjacent factories, it is understandable that the plaintiff testified he heard no

51

bell, whistle or horn or warning sounds from the oncoming locomotive.

■ ■ Negligence is a question of fact. McCann v. City of Waukegan, 83 Ill App2d 284, 227 NE2d 558 (1967). It is obvious that damages cannot be assessed upon a mere surmise and conjecture as to what possibly happened to cause an injury, since the law requires affirmative and positive proof of actionable negligence as to the proximate cause of injuries and resulting liability. Sansone v. Atchison, T. & S. F. Ry. Co., 83 Ill App2d 435, 228 NE2d 101 (1967).

■ ■ It is our opinion from a reading of this record that there is no evidence, direct or circumstantial indicating that defendant caused the accident in question. The mere fact that defendant's locomotive came in contact with plaintiff's automobile does not make that negligence. Inasmuch as the testimony of the plaintiff failed to (1) disclose any fact giving rise to a reasonable inference that defendant was guilty of any negligence; (2) establish the cause of the accident; and (3) connect the defendant to the cause of the accident, we think the plaintiff failed to make out a prima facie case against the defendant.

■ ■ Implicit in any verdict for a plaintiff, there must be a finding of the absence of any contributory negligence on his behalf. Freedom from contributory negligence must be affirmatively pleaded and proved by the plaintiff. Sweeney v. Matthews, 94 Ill App2d 6, 236 NE2d 439 (1968). In considering whether plaintiff was contributorily negligent as a matter of law, the evidence must be considered, with all reasonable inferences to be drawn therefrom, in its aspects most favorable to the plaintiff. The uncontradicted evidence shows that the headlight of the locomotive was burning, that the bell was ringing, and the whistle was blown for the crossing, yet the plaintiff heard nothing, nor saw anything.

■■■ Plaintiff made no effort to explain why he did not hear anything, yet he testified that the windshield wipers were on, the defroster was operating, the heater was on and there were noises coming from the muffler of his automobile. In addition, there was a noise from the adjacent factories and the volume of traffic going over the four sets of tracks. The right side-door window was rolled up and wet from the falling rain and plaintiff could not see out of it, yet he stated that he approached the crossing with caution and looked both ways. When there is any evidence which tends to show plaintiff's due care, the question of due care is for the jury, but whether there is any such evidence, is a question of law, and in determining that question the Appellate Court can examine the record to determine whether such evidence really exists. Elliott v. Elgin, J. & E. Ry. Co., 325 Ill App 161, 59 NE2d 486 (1945). Under the factual situation as disclosed by the evidence in this case, we are of the opinion that the plaintiff has failed to establish due care on his part.

■■■ While the trial judge declined to grant defendant's post-trial motion for a new trial, a reviewing court may overturn a jury's verdict if such is contrary to the manifest weight of the evidence. Whitman v. Prescott, 80 Ill App2d 49, 225 NE2d 384 (1967). We find the jury's verdict was unreasonable and opposed to the weight of the evidence and therefore grounds for a new trial. Since there must be another trial of this cause, we shall not discuss the other contentions raised by the defendant.

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

MURPHY, J., concurs.

BURMAN, J., dissenting:

I cannot agree with the conclusion reached by the majority of the Court that the plaintiff failed to establish that he had exercised due care or that the plaintiff failed to make out a prima facie case giving rise to a reasonable inference that the defendant was guilty of negligence.

The plaintiff testified at the trial that the collision in which he and the defendant, Belt Railway Company, were involved occurred in a heavily industrial area. The plaintiff stated that in order to reach his destination, he had to cross four sets of railroad tracks, crossing Lavergne Avenue within this area. Plaintiff said that he had passed through the crossing at least a hundred times prior to the collision and that he had never encountered a locomotive on the tracks until the evening in question. After setting the time of the collision at about 7:00 p. m., the plaintiff said that he had turned on his headlights because of the darkness and that he had turned on his windshield wipers because it was "misting rain and drizzling." He further stated that he was following about twelve cars and that the same number were following him. The plaintiff said that when he came to the crossing he stopped his car at the stop sign, turned, looked both ways, and not seeing an approaching train proceeded forward. As the plaintiff approached the third set of tracks he was struck by defendant's locomotive and was injured. The plaintiff said that he neither heard a bell or whistle nor saw a light on the locomotive. Also, there was no artificial illumination at the crossing—no streetlights, factory lights, blinking signals or crossing gates. The record reveals that the defendant's diesel locomotive was not attached to any cars and was in the process of backing up from a factory entrance along a curving track when it collided with the plaintiff's car. A flagman was not present at the crossing although there

were four men on the locomotive. A police officer testified that the traffic was quite heavy before and after the time of the collision.

Edward Dean, a conductor on the locomotive and the person directing its operation, testified on cross-examination that when the locomotive was fifty to seventy-five feet from Lavergne Avenue he saw a car go across the crossing in a northerly direction. At that moment the conductor stated, he also saw the plaintiff's car turning the corner of 67th and Lavergne Avenue. From that time until the moment of impact, the conductor testified that he did not take his eyes off the plaintiff's car.

The defendant takes the position that "[t]he prime controversy is whether the defendant had a light on the train, blew a whistle or sounded a bell." Apparently, if any of these elements were present the plaintiff would be barred from recovery, because warned of the locomotive's presence he nevertheless proceeded through the crossing, thus failing to exercise due care. The defendant maintains that because the "[p]laintiff's testimony as to the light, whistle and bell is negative in character" and the plaintiff's testimony was countered by positive testimony from the defendant's witnesses, the plaintiff failed to raise an issue of fact about the absence or presence of the light, whistle or bell, and the question should not have gone to the jury.

The defendant cites Berg v. New York Cent. R. Co., 391 Ill 52, 62 NE2d 676, in support of his theory. In Berg, the Illinois Supreme Court was asked to determine "whether the negative testimony of plaintiff's witnesses may be considered as proving, or tending to prove, that no warning was given of the approach of the train by sounding of a bell or whistle." Although the Court considered this question holding "that negative evidence is admissible where the attending cir-

cumstances are such as to show that it has some probative force" and that "[t]here was a conflict in the evidence on this issue [whether a warning was given] and its weight was for the jury" [1] the Supreme Court held that the icy condition of the street was the proximate cause of the plaintiff's injury, not the defendant's wrongful act, and under such circumstances there was no question of fact for the jury.

I fail to see how the Berg case supports the defendant's contention in the case at bar. Rather, the dicta relied on by the defendant appears to bolster the plaintiff's claim that he presented a prima facie case even though he used negative testimony. I believe that the record in the instant case reveals that the attending circumstances were such as to show that the plaintiff's negative testimony had some probative force and thus there was a question of fact for the jury to consider. Furthermore, I do not believe that the jury's determination on the conflicting evidence should be disturbed by this Court. As stated in Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 323, 146 NE2d 205:

> The jury saw and heard the witnesses. Where disputed questions of fact are presented to a jury and the jury passes upon them, unless palpably erroneous, the finding of fact will not be disturbed by the reviewing court. It is not the province of the court to substitute its judgment for that of the triers of the fact, where there is a conflict in the evidence. It is the province of the jury alone, to determine the weight and the credibility of witnesses. To be against the manifest weight of the evidence re-

---

[1] The Court was of the opinion that "[t]he negative testimony of plaintiff's witnesses was sufficient to sustain the finding of negligence when attacked by a motion for judgment non obstante veredicto."

quires that an opposite conclusion be clearly evident.

I am of the opinion, after examining the record in this case, that the actions of the trial judge who saw and heard the witnesses and who denied the defendant's post-trial motions after receiving the jury's verdict were correct and should have been affirmed.