AUREL S. DARI, Plaintiff-Appellee, v. UNIROYAL, INC., Defendant-Appellant.

First District (2nd Division)    No. 61500

Opinion filed August 10, 1976.

A. G. Hubbard, Paul Kaulas, and Fredrick W. Temple, all of Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellant.

John A. Doyle, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Aurel Dari, commenced this action to recover damages for personal injuries allegedly sustained by him in a two-car accident. The other vehicle involved in the collision was driven by an employee of defendant, Uniroyal, Inc., while the employee was in the course of his employment. The two-count complaint alleged negligence and wilful and wanton conduct on the part of defendant in its maintenance, operation, and control of its automobile. At the close of evidence, plaintiff dismissed the charges filed against the employee-driver of the other car, leaving Uniroyal as the sole defendant.[1] The jury returned a general verdict in favor of plaintiff, together with answers to special interrogatories finding plaintiff free from both contributory negligence and contributory wilful and wanton conduct. The jury assessed plaintiff's damages in the amount of $23,000, and judgment was entered thereon.

After defendant's post-trial motion was denied, it perfected this appeal whereby the following two issues are presented for our consideration: (1) whether the trial court committed reversible error when it ruled that a narrative statement given by plaintiff to his insurance carrier could not be used or referred to by defendant at trial; and (2) whether the denial of defendant's motion for a directed verdict on the wilful and wanton count constituted reversible error.

---

[1] Hertz Corporation was initially named as a party defendant. Hertz had leased the automobile driven by defendant's employee to defendant for use in its business. Charges against Hertz were subsequently dismissed, although the record does not indicate when this dismissal occurred.

On the afternoon of July 1, 1969, the two automobiles involved in the accident were traveling in a westerly direction on U.S. Route 30 in Indiana. In the area where the accident occurred, Route 30 is a straight, four-lane highway with a median strip separating two westbound lanes from two eastbound lanes. The vehicle driven by defendant's employee (hereinafter referred to as "defendant's car") was traveling in the inside lane adjacent to the median strip. Plaintiff's automobile was positioned in the outside lane nearest to the shoulder of the highway, some distance behind defendant's car. Impact occurred as the driver of defendant's car was attempting to execute a right-hand turn from the inside lane, across the outside lane, and into a driveway leading to a farm. Although plaintiff veered to his right in a futile attempt to avoid an accident, his car struck defendant's car, with both vehicles coming to rest in a ditch off the side of the highway. Plaintiff was taken to a hospital where he was treated and released.

On the date of the accident, both plaintiff and defendant had automobile liability insurance coverage provided by the same insurance carrier, Allstate Insurance Company. On July 29, 1969, Allstate was advised by mail that plaintiff had retained an attorney to represent him in any matter arising from the accident. Allstate acknowledged receipt of the notice of representation by a letter dated August 19, 1969. On October 8, 1969, plaintiff negotiated a settlement, without the benefit of legal counsel, with Allstate on his property damage claim arising from the mishap. As a condition precedent to entering into the settlement, plaintiff was required to give Allstate a narrative statement of his account of the accident.

The complaint giving rise to this action was filed on February 12, 1971. During trial, the trial court ruled that the narrative statement, which was in the nature of a proof of loss statement, could not be referred to or otherwise used by defendant at trial. Defendant contends that this ruling constituted reversible error. It is argued that this statement was not a privileged communication, and that evidence of the statement should have been admissible for the purpose of impeaching plaintiff's testimony.

■▌ Plaintiff relies on *People v. Ryan*, 30 Ill. 2d 456, 197 N.E.2d 15, wherein the supreme court held that statements made by an insured to his insurance carrier, where the insured is not represented by counsel of his own choosing and the insurer is under a contractual obligation to its insured to select an attorney to conduct the defense of any civil litigation commenced against the insured, are clothed with the attorney-client privilege while such statements remain in the control of the insurance company. But plaintiff overlooks the exception to this general rule that when an insurance carrier has extended coverage to two parties who are

potential adversaries in a civil action, any statement made to the company by either party prior to the other party retaining independent counsel is not considered to be a privileged communication. *Monier v. Chamberlain*, 35 Ill. 2d 351, 221 N.E.2d 410.

The intent of the insured and his relationship with his insurance carrier at the time such a statement is made by him provide the distinguishing element between the two rules. In the first instance, a statement is made by the insured to his insurer with the implicit understanding that such statement will be transferred to an attorney selected by the company to conduct the defense of the insured in the event the insured is named as a defendant in a civil action. However, the shield of privileged communication cannot be raised if the insured retained independent counsel prior to making the statement, since he no longer contemplates his insurer providing him with legal representation, should such be needed.

In the second situation, where both parties have the same insurance carrier, any statement given by either party to the company is not considered privileged if made prior to the commencement of a lawsuit because the insurer would not know at that time whom it will be required to represent. Thus, any statement given under these circumstances is not considered confidential since it is given to an agent of a potential adversary. Of course, if one of the parties retained independent counsel prior to the time when the other party gave a statement to the insurance company, the dual agency relationship of the company with both parties would no longer operate to bar a claim of privilege by the party that made the statement, for such statement under these circumstances would be considered to have been given in confidence.

In the instant case, both parties had secured automobile liability insurance coverage with Allstate. For purposes of settling his property damage claim, plaintiff gave his account of the accident to Allstate in the form of a narrative statement. Since this statement was given some 16 months before this personal injury action was commenced, Allstate received this statement at a time when it did not know whom, if anyone, it might subsequently be required to defend; plaintiff gave this statement to an agent of a potential adversary. Moreover, Allstate was notified some 10 weeks before this statement was given that plaintiff had retained private counsel for the purpose of representing him in any matter which might arise from the accident. This notice tended to indicate that plaintiff would not request legal assistance from Allstate and also that plaintiff would probably be bringing a civil action rather than defending one. Hence, the narrative statement given by plaintiff to Allstate on October 8, 1969, was not clothed with any of the incidents of confidentiality which are required

for a statement of this nature to be treated as a privileged communication.

That plaintiff was required to make such a statement as a condition precedent to settling his property damage claim is a customary practice in the insurance industry. Insurance policies of this nature generally provide that the insured is required to give notice and proof of loss to his insurance company so that the company can intelligently estimate its rights and liabilities under the policy. (7 Am. Jur. 2d *Automobile Insurance* §139 (1963).) Such extrajudicial statements by an insured who subsequently becomes a party to a civil action are admissible against the insured for impeachment purposes, and, if the statements qualify as admissions, they are also admissible as substantive evidence. *Oberkircher v. Chicago Transit Authority*, 41 Ill. App. 2d 68, 190 N.E.2d 170; 4 Wigmore, Evidence §1048 (Chadbourn rev. ed. 1972).

■■ Under the circumstances of this case, this type of statement was admissible, and suppressing the use of this statement prior to any attempted use thereof was both premature and erroneous. For these reasons, the trial court erred when it ruled that this narrative statement, regardless of its content, could neither be referred to nor used by defendant during trial.

Whether this ruling constituted reversible error, however, depends upon the use which could have been made of this statement at trial by defendant and the resultant prejudice to defendant by the exclusion of this evidence. Defendant argues that it was materially prejudiced by the exclusion of this statement because it was thus denied the opportunity to impeach and contradict plaintiff's testimony by showing his inconsistency.

We have carefully examined the narrative statement plaintiff gave to Allstate and compared it with his testimonial account of the accident. We find no variance of any significance between these two versions of the incident. Defendant primarily relies upon what it considers to be an inconsistency as to when plaintiff first noticed defendant's vehicle. In the statement given to Allstate, plaintiff stated, "This other car was about 50 feet in front of me when I first saw him." At trial, plaintiff testified that he was approximately 200 feet from the driveway when he first noticed defendant's car turn towards the driveway. Even assuming that this alleged inconsistency pertains to a material matter so as to render it a proper subject for impeachment, a close reading of the record reveals that these two statements not only refer to two different matters, but they are also consistent with plaintiff's testimony under cross-examination. The statement given to Allstate refers to the instant when the two vehicles were traveling in nearly perpendicular paths to one another as plaintiff proceeded along the highway and defendant's car turned across plaintiff's

lane. At that moment, when the two automobiles were about 50 feet apart or three or four car lengths apart according to plaintiff's testimony under cross-examination, plaintiff was able to observe the occupants in defendant's car. In contrast, plaintiff's testimonial statement referred to when his attention was first drawn to defendant's car. That occurred when defendant's brake lights flashed as its vehicle decelerated prior to making the turn. At this point, plaintiff was about 200 feet from the driveway or, according to his testimony under cross-examination, about 10 car lengths away.

■■ Since evidence of a prior inconsistent statement is only admissible for purposes of impeachment if there exists a requisite degree of variance between the extrajudicial statement and the witness' testimony and the two statements relate to a material matter (*Goldstein v. Hertz Corp.*, 16 Ill. App. 3d 89, 305 N.E.2d 617; *Black v. DeWitt*, 55 Ill. App. 2d 220, 204 N.E.2d 820), the exclusion of an out-of-court statement cannot prejudice the offering party if no inconsistency between the two statements is apparent. In the instant case, although it was error for the trial court to exclude the narrative statement before ascertaining its content, on the ground that it constituted a privileged communication, such error was harmless since the narrative statement was lacking in impeachment value.

Defendant next contends that the trial court erred in denying its motion for a directed verdict on the wilful and wanton count. It is argued that an improper turn, without more, does not constitute wilful and wanton conduct. Therefore, defendant maintains that it was prejudiced by the trial court's refusal to remove this issue from the jury's consideration.

Although the substantive issues of this case were litigated in accordance with the law of Indiana since the accident occurred in that jurisdiction, it was agreed at trial that Illinois' law governing the wilful and wanton count is identical to the law of Indiana. Consequently, the following instruction consistent with the Illinois Pattern Jury Instructions (IPI Civil No. 14.01) defining "wilful and wanton conduct" was given to the jury, without objection:

> "When I use the expression 'wilful and wanton conduct' I mean a course of action which, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others."

In denying defendant's motion, the court made the following observation:

> "I would believe * * * a car without any warning, without any turn signal abruptly turned off of a fast moving highway that the jury might be able to find that it was wanton misconduct, if they viewed the case in the light most favorable to the plaintiff, so your motion on that count is denied."

██ The record in the instant case contains sufficient evidence upon which the wilful and wanton count could have been properly submitted to the jury. Plaintiff sustained injuries as a result of conduct involving an unreasonable risk with a high probability of danger, of which the driver of defendant's car should have had knowledge. (See *Hering v. Hilton*, 12 Ill. 2d 559, 147 N.E.2d 311.) A reasonable person could conclude that the driver of defendant's car exhibited "an utter indifference to or conscious disregard for" plaintiff's safety. Thus, the trial court did not err in denying defendant's motion. *Pedrick v. Peoria & Eastern R. R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HAYES and DOWNING, JJ., concur.