MARY CHIESA, Plaintiff-Appellee, *v.* RUSSELL LASPISA, Individually and d/b/a Russell's Pharmacy, Defendant-Appellant.

First District (4th Division)    No. 79-1828

Opinion filed November 20, 1980.—Rehearing denied December 18, 1980.

912

Nicholas T. Kitsos, of Chicago, for appellant.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (Harry A. Young, Jr., Gayle F. Haglund, and Alan Rosen, of counsel), for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:
Defendant, Russell Laspisa, appeals from an order of the circuit court of Cook County entering judgment on the jury's verdict in favor of the plaintiff, Mary Chiesa. Plaintiff's action sought to recover from defendant a total of $37,988 unpaid principal and interest on five promissory notes executed by defendant.

On appeal, defendant contends: (1) the trial court erroneously instructed the jury as to the issues in the case and the proper burden of proof; (2) the trial court erred in submitting to the jury a verdict form specifying the exact amount of money sought to be recovered; (3) the trial court made various erroneous evidentiary rulings which denied defendant a fair trial; (4) the jury verdict was against the manifest weight of the evidence; and (5) the trial court erroneously permitted the recovery of a usurious interest claim.[1]

We affirm.

Plaintiff and her husband, Dominick Chiesa, are the designated payees on five promissory notes executed by defendant. The plaintiff filed this five count action after her husband's death. Each count sets forth a separate promissory note and its terms: The first note, dated August 2, 1971, has a face value of $5,000 and a 15% per year interest rate accumulating after the August 2, 1973, due date; the second note, dated April 1, 1972, and due April 1, 1973, has a face value of $5,000 and does not reflect an interest rate; the third note, dated February 1, 1973, has a face value of $5,000 and a 6% per year interest rate accumulating after the February 1, 1974, due date; the fourth note, dated June 1, 1973, has a face value of $7,000 and a 6% per year interest rate accumulating after the June 1, 1974, due date; and the fifth note, dated October 1, 1974, has a $7,000 face value and a 15% per year interest rate accumulating after October 1, 1974. The fifth note was due on October 1, 1975.

---

[1] This contention is not addressed by defendant in his main brief and defendant did not file a reply brief. Assignments of error not argued in briefs submitted to the court on appeal are considered waived and not presented for review. *Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God* (1958), 13 Ill. 2d 258, 148 N.E.2d 777.

Defendant's answer denied the allegations of plaintiff's five-count complaint and further stated that defendant had paid Dominick Chiesa the face amount of each of the five notes which totaled $29,000. Appended to defendant's answer was a handwritten statement, signed by Dominick Chiesa, acknowledging defendant's payment of the five promissory notes.[2] Defendant referred to this statement as a receipt. Plaintiff's reply denied that defendant had repaid the notes and denied that Dominick Chiesa had signed a statement which purported to be a receipt. Neither party disputed the accuracy of the amount of principal and interest reflected in the five promissory notes; the only disputed issue was whether or not defendant had repaid the face amount of the five promissory notes to Dominick Chiesa. The trial testimony primarily concerned the events surrounding the purported payment and the issuance of the statement or "receipt."

The testimony of plaintiff, her son, Edward Assay, and Kenneth Whitmer[3] as to what occurred on May 2, 1975, was substantially the same. On May 2, the plaintiff and Edward Assay visited Dominick Chiesa in the hospital. Dominick Chiesa's hospitalization was due to a serious illness and he wanted to execute his last will and testament on that day. Whitmer went to the hospital to witness the execution of the will. Shortly after noon, defendant arrived with the will which had been prepared by an attorney, as Dominick Chiesa had requested. Another person, Robert Tonieto, accompanied defendant and he remained outside the hospital room, near the door.

Defendant handed the will to Dominick Chiesa. Dominick Chiesa reviewed the will, signed it, and then returned it to defendant. Defendant then asked Dominick Chiesa to sign a blank piece of paper.[4] Defendant indicated he would turn the signed paper over to the attorney who prepared the will so that if any changes or corrections were necessary, the attorney would have Dominick Chiesa's signature on file and Dominick Chiesa would not have to again be disturbed. Thereupon, Dominick Chiesa signed the blank paper and returned it to defendant. Defendant folded the paper and placed it in his pocket.

The plaintiff further testified that defendant's exhibit 1, the pur-

---

[2] This paper also states that Dominick Chiesa was in the hospital and not able to go to the safety deposit box to get the five notes and that defendant still owed Dominick Chiesa two notes, "one of $7,000 on which he is paying principal and interest, $435 per month, balance $5,720.00. He owes me a second note of $3,500.00 plus interest." The paper was not dated.

[3] Kenneth Whitmer's evidence deposition was read to the jury.

[4] Both plaintiff and Edward Assay testified they actually saw that the paper was blank. Kenneth Whitmer heard defendant say the paper was blank; he could not remember whether he had actually seen the paper.

ported receipt or statement, looked like the blank piece of paper which Dominick Chiesa had signed on May 2, 1976. Plaintiff also stated that defendant had been a friend of plaintiff and her husband almost 20 years, and she and her husband had leased business space from defendant.

Dominick Chiesa was released from the hospital in mid-May 1975. Between May and October, plaintiff and her husband saw defendant once or twice a week at their place of business and they discussed repayment of the promissory notes. Defendant never denied owing the money nor did he ask for the return of the promissory notes. Plaintiff further asserted that, in the summer of 1974, defendant agreed to obtain and pay the premiums on a $30,000 life insurance policy on his life to secure repayment of defendant's loans. Defendant agreed to be the insured and to name Dominick Chiesa as the beneficiary of the policy. From January to June 1975, defendant paid plaintiff $3,897 in interest on the first of the promissory notes.

Edward Assay additionally testified that after Dominick Chiesa died he had a conversation with defendant sometime in the spring of 1976 at defendant's pharmacy. Defendant told Assay that he would start repaying the loans to plaintiff as soon as he took care of some other personal loans. During a subsequent conversation, defendant told Assay that he did not owe plaintiff any money and that he had proof of this fact.

Kenneth Whitmer, a friend of both plaintiff and defendant, also testified that in the early part of 1975, he talked with defendant on three separate occasions about defendant's financial status. During these conversations, which took place while Whitmer was employed by defendant, defendant expressed regret that he had borrowed $30,000 from Mary and Dominick Chiesa instead of instituting bankruptcy procedures.

Richard Price, an insurance broker, testified that at defendant's request he had issued two life insurance policies on defendant's life. The first policy, issued in March 1974, insured defendant's life in the amount of $20,000 and the named beneficiary was Charles Smith. The second life insurance policy named Dominick Chiesa as the beneficiary. The face value of the second policy, showing an issue date of October 2, 1974, was $30,000. Price further stated that life insurance policies were common loan security devices used in business financing.

After the plaintiff rested, defendant testified that he had prepared the five promissory notes for the five loans and he had received the face amounts of the promissory notes. He asserted that he had repaid Dominick Chiesa the full amounts due on the notes. Defendant indicated that he had not repaid Dominick Chiesa the amounts due on two additional promissory notes of $7,000 and $3,500. Defendant stated that these were made sometime after the loan secured by the fifth note had been made. Defendant further asserted he had copies of the promissory

notes which secured these two loans, but the copies of the notes were somewhere at home.

Defendant testified he paid Dominick Chiesa the amounts due on the first two promissory notes, dated respectively August 2, 1971, and April 1, 1972. The payments were made in cash which defendant obtained by cashing various checks made payable to him. These various negotiated checks, totaling $27,100, were introduced into evidence as defendant's exhibits. Defendant further asserted that the third and fourth promissory notes, dated February 1, 1973, and June 1, 1973, were paid from a $20,000 loan he obtained from his friends, Dexter Sandrik and Chuck Smith. The fifth promissory note, dated October 1, 1974, was paid with personal funds. He never requested the return of the promissory notes from Dominick Chiesa.

Defendant further testified that on May 2, 1975, he went to Dominick Chiesa's hospital room to witness the execution of Dominick Chiesa's will. Robert Tonieto, a notary public, was present in the room and he notarized the signature of the witnesses after each witness had signed the will. Defendant then stated that Dominick Chiesa had asked him to prepare a receipt for the money defendant had repaid and Dominick Chiesa signed this receipt after he signed the will. At the time of this conversation, only Assay, Whitmer, Tonieto and defendant were present in the hospital room. Defendant stated he did not ask Tonieto to notarize the receipt.

Defendant acknowledged that he had instituted voluntary bankruptcy proceedings in 1973, prior to repaying the fifth promissory note. Although he was required to list on his bankruptcy schedule all loans repaid in the preceding 12 months, and plaintiff's third and fourth promissory notes, if repaid, would have been repaid within that time, defendant did not list the repayment of the loans on his bankruptcy schedule. Defendant explained that his wife prepared "90%" of the schedule and he forgot to tell her about the $12,000 cash payment he made to Dominick Chiesa between July and November of 1973. Defendant admitted that he signed the bankruptcy schedule under oath.

Defendant then called Sandrick and Smith as defense witnesses. Both Sandrik and Smith testified that they each loaned defendant $10,000 and that defendant reaffirmed the debt after he was discharged in bankruptcy. Although defendant had repaid both Smith and Sandrik some of the money he owed them, neither Sandrik nor Smith had given defendant a receipt for those amounts he had repaid.

Robert Tonieto, a close friend of defendant for 15 to 20 years, also testified as a defense witness. Tonieto stated that on May 2, 1975, he saw Dominick Chiesa, Kenneth Whitmer, and defendant affix their signatures to Dominick Chiesa's will. Plaintiff was not present in the room when the

documents were signed. Tonieto also asserted that he saw other documents signed by Dominick Chiesa and none of these was signed in blank. Although he was not sure, defendant's exhibit 1, the purported receipt or statement, could have been one of the documents he saw Dominick Chiesa sign.

The defense then rested. There was no rebuttal testimony. After closing arguments and instructions to the jury, the jury returned a verdict in favor of plaintiff in the sum of $37,988. Judgment was then entered. This appeal followed.

OPINION

I

Defendant first contends that the trial court erred in submitting to the jury certain instructions tendered by the plaintiff. Instruction No. 9 describes the nature of the pleadings and the issue framed by those pleadings. Instruction No. 10 explains the preponderance of evidence standard and instruction No. 11 states that plaintiff had the burden of proving that the principal and interest on the five promissory notes were not paid by defendant. It also sets forth that defendant has the burden of proving the affirmative defense that the principal and interest on the five promissory notes were paid.

Defendant further contends that it was error for the trial court to specify, in the verdict form, the amount of damages plaintiff was entitled to recover ($37,988) if the verdict was in her favor. Plaintiff argues that by failing to object at trial to these instructions and the verdict form, defendant has waived any alleged error for purposes of appeal. We agree.

■■ It is well settled that the giving of an instruction cannot be urged as error on appeal unless a specific objection to the content or form of the instruction has been raised in the conference on instructions and in the post-trial motion. To preserve an objection, the objection must be made specific enough to fairly inform the trial judge of the basis of the objection. *Allen v. Howard Bowl, Inc.* (1965), 61 Ill. App. 2d 314, 210 N.E.2d 342.

Here, the record discloses that, during the conference on instructions, defendant failed to specifically object to instruction Nos. 9, 10, and 11, although he did specifically object to other instructions tendered by the plaintiff. After instruction Nos. 9, 10, and 11 were tendered by plaintiff, defendant's counsel responded, "That's okay." Thus, at trial, defendant's counsel actually agreed to the giving of the instructions he now claims were erroneously submitted to the jury. Where, as here, counsel "has led the court into the belief that he waived error, if any, contained in [the instructions], * * * we do not believe [defendant] by

reason of the action of his counsel, should be entitled to be heard on this question." *Pettit v. Weil-McLain Co.* (1929), 252 Ill. App. 423, 427. See also *Thomas v. Weber* (1957), 14 Ill. App. 2d 562, 145 N.E.2d 128; Ill. Rev. Stat. 1975, ch. 110A, par. 239(c).[5]

■■ The thrust of defendant's complaint about these instructions is that they did not apprise the jury that his written document was a release and was prima facie evidence that he had repaid the promissory notes. Defendant further argues that, under the parol evidence rule, plaintiff should not have been allowed to vary the terms of the release. Here, we need only note that had defendant wanted such an instruction, he should have tendered it. More importantly, defendant never raised the question of release in the trial court, but instead, referred to the document as a "letter" and a "receipt." Alleged errors which are not raised at trial may not be considered on appeal. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327; *Bohannon v. Schertz* (1974), 21 Ill. App. 3d 149, 315 N.E.2d 316.) Thus, the issue of whether or not this writing constitutes a release is not before us.

Similarly, defendant has waived any alleged error in the form of the verdict submitted to the jury.[6] The record amply documents defense counsel's acquiescence to the form of the verdict.

"The court: It's understood * * * that the verdict form includes the interest to date on those notes?

[Defense counsel]: Yes.

The court: Together with the principal amount and a credit which was in the amount of—do you have that?

[Plaintiff's counsel]: $3,897.

The court: * * * Is that satisfactory, * * *?

[Defense counsel]: Yes."

■■ Accordingly, we conclude that by failing to object to the tendering

---

[5] We also note that the instructions were based on the Illinois Pattern Jury Instructions: two instructions were modified; one instruction was set forth verbatim. Supreme court rule 239(a) requires the use of Illinois Pattern Jury Instructions in a civil case whenever applicable, "[u]nless the court determines that it does not accurately state the law." Ill. Rev. Stat. 1975, ch. 110A, par. 239(a).

[6] Defendant cites sections 65 and 68 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, pars. 65, 68) as authority for the proposition that the trial court improperly influenced the jury. As plaintiff correctly notes, section 65 addresses special verdicts. Neither party requested a special verdict and defendant fails to explain how this statutory section supports his contention. Section 68 provides, in pertinent part, that if the claim involves several counts "based on different demands upon which separate recoveries might be had" and *any party moves* the court to order the jury to find a separate verdict upon each demand, then the court shall order the jury to do so. (Ill. Rev. Stat. 1975, ch. 110, par. 68(3).) Since neither party so moved, the court was not required to instruct the jury in this manner. Further, the amount of money which was loaned to defendant plus interest was not in dispute; the disputed fact issue was whether or not defendant repaid the money loaned.

of allegedly erroneous instructions and verdict form, defendant has waived consideration of these assigned errors.

## II

Defendant next contends the verdict was improperly influenced and is not supported by the evidence. In support of his argument that the verdict was improperly influenced, defendant cites various alleged trial errors. We will first dispose of these.

Defendant challenges as erroneous the trial court's ruling which restricted his cross-examination of the plaintiff. A trial court has broad discretion in controlling the scope of cross-examination, and reversal will result only where such discretion has been clearly abused and the abuse materially affected the results of the trial. *Meyer v. Williams* (1957), 15 Ill. App. 2d 513, 146 N.E.2d 712; see also *Piechalak v. Liberty Trucking Co.* (1965), 58 Ill. App. 2d 289, 208 N.E.2d 379.

■■ We believe that the trial court correctly exercised its discretion. When defendant attempted to question plaintiff about whether or not she had reported, as income for purposes of Federal income tax, the interest he had paid her, the court determined that this examination was not relevant to the issue in the case—whether defendant had repaid the five promissory notes. Defendant argued that if the money was interest then he should get a certain credit. Defendant then admitted to the court that the money was interest, and since the plaintiff also had testified the money was interest, there was no area of disagreement that required further cross-examination. Clearly the trial court's restriction here was not an abuse of discretion.

■■ Defendant also argues that he should have been permitted to question plaintiff as to whether or not she included the five promissory notes in the inventory of assets in the estate of Dominick Chiesa. Defendant urges that his questions in this area were designed to elicit testimony which would tend to corroborate defendant's testimony that he had paid the five promissory notes. Defendant's attorney conceded he had not objected to plaintiff bringing the instant suit in her name, and he acknowledged the promissory notes were the property of both plaintiff and her husband. Since ownership of the notes was not an issue and defendant has not shown, nor are we able to determine, the relevancy of the evidence he sought to elicit, we conclude that the trial court's ruling was not an abuse of discretion.

Defendant also asserts he was denied the opportunity to cross-examine plaintiff about the amount of money found in the Chiesas' safety deposit box after Dominick Chiesa's death. There is nothing in the record to indicate that defendant questioned plaintiff about the money found or

that the trial court restricted defendant's cross-examination of plaintiff as to the contents of the safety deposit box. Even if the trial court had sustained an objection to such a question, it would not indicate that the trial court abused its discretion. In our view, the amount of money found in the safety box is not probative of whether or not defendant repaid the five promissory notes.

■■ Defendant also asserts that the trial court erred in allowing Edward Assay to testify about a telephone conversation he heard between Dominick Chiesa and defendant since the testimony was hearsay. Defendant, however, never objected to this testimony at trial and, therefore, he has waived the alleged error for purposes of appeal.

### III

Defendant argues that the jury verdict was against the manifest weight of the evidence and thus cannot stand.

Whether or not the five promissory notes were repaid by defendant was an issue of fact for the jury to decide. The jurors observed the demeanor of the witnesses and judged their credibility; the jurors considered all of the evidence presented. We can find no basis, considering the whole record, to conclude that the jury's verdict was contrary to the manifest weight of the evidence. The plaintiff and two witnesses testified that Dominick Chiesa signed a blank piece of paper on the day he signed the will; defendant asserted Dominick Chiesa signed a written receipt; and Tonieto stated Dominick Chiesa did not sign anything in blank. Plaintiff, Assay, and Whitmer testified that defendant admitted to each of them on different occasions (after the time when defendant claimed he had repaid the five promissory notes), that he owed plaintiff money.

Although defendant asserted he had repaid the five promissory notes, he admitted he had obtained a life insurance policy in the amount of $30,000 and designated Dominick Chiesa the beneficiary. Defendant explained that, in the event of his death, Dominick Chiesa would be paid the money he still owed on the sixth and seventh promissory notes, which totaled only $10,500. These notes were never produced by defendant. The plaintiff testified, however, that before the life insurance policy was issued, she participated in a conversation with defendant and her husband about the use of a life insurance policy as additional security for repayment of the loans. During this discussion, defendant agreed to obtain the insurance policy to secure the loans.

■■ The foregoing illustrates some of the numerous fact issues which the jury ultimately evaluated and resolved in favor of the plaintiff. It is the function of the trier of fact, not this court, to assess the credibility of witnesses and weigh the evidence. In our view, it is not at all manifest—

clearly evident, plain or indisputable—that the jurors came to the wrong conclusion. *Black v. DeWitt* (1965), 55 Ill. App. 2d 220, 204 N.E.2d 820.

For the reasons noted, the judgment is affirmed.

Affirmed,

JOHNSON and JIGANTI, JJ., concur.

