JOHN W. MOORE, Plaintiff-Appellant, *v.* FARMERS INSURANCE EXCHANGE, Defendant-Appellee.

Second District   No. 81—801

Opinion filed December 29, 1982.

Gary K. Mickey and Bernard K. Weiler, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellant.

William J. Sneckenberg and Robert J. Spinazzola, both of Lev & Sneckenberg, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, John W. Moore, appeals from a judgment entered on a jury verdict in favor of defendant Farmers Insurance Exchange. The case was tried on count I of plaintiff's third amended complaint alleging defendant's wrongful failure to pay a claim for fire damage to his house and contents under a homeowner's policy issued to plaintiff by defendant. Defendant raised the affirmative defenses of plaintiff's

misconduct in causing the fire and plaintiff's false swearing as to the cause of the fire and the amount of the loss. The jury returned a verdict for defendant and answered two special interrogatories supporting each of these affirmative defenses. Count II alleging wilful, wanton and vexatious refusal to pay and count III seeking attorney fees, costs and statutory damages under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 767) were reserved for judgment by the court pending judgment on count I. After trial, the court granted summary judgment for defendant on counts II and III.

Plaintiff raises the following issues on appeal: (1) the jury verdict was against the manifest weight of the evidence due to inadequate circumstantial evidence connecting plaintiff to the fire's origin; (2) the court erred in admitting evidence of the presence of accelerants in plaintiff's home four days after the fire without proof that the premises were in the same condition at the time of the fire as when the evidence of accelerants were found; (3) defendant failed to prove the affirmative defense of plaintiff's false swearing; (4) the court erred in limiting plaintiff's offer to prove he was eligible for unemployment compensation; (5) the court allowed improper impeachment of plaintiff's witness Robert Carter; (6) the court erred in allowing defendant's investigator to give an opinion as to the most direct route between two locations in the city of Aurora; (7) defendant's motion for summary judgment on counts II and III should have been denied; and (8) this court should reverse the trial court on the evidence and enter judgment for plaintiff.

Plaintiff testified in his case-in-chief that his home suffered extensive damage from a fire occurring at approximately 2 a.m. on January 3, 1980. At the time of the fire, plaintiff stated he was insured against fire loss by defendant. Plaintiff testified that defendant did not pay the claim he filed under this policy.

On January 16, 1980, plaintiff filed a sworn proof of loss form with defendant estimating his personal property loss at $18,000 and damage to the premises at $25,000. A list of the personal property that plaintiff claimed he lost in the fire, which noted the value of each item, was attached to the proof of loss.

John Braun, a building contractor, also testified for plaintiff. He testified that he had submitted a $21,559 estimate for the repair of plaintiff's home to defendant.

Defendant, then, presented its case. Assistant fire chief Gene Plott testified for defendant that the fire department received a call regarding the fire at plaintiff's house at 1:17 a.m. on January 3, 1980. He arrived at the scene within three minutes of the call. Plott ob-

served no signs of forced entry, and it was necessary for the fire fighters to force open the front and back doors because they were locked. Plott stated that fire was coming out of the windows on the south side of the house and glass may have been out of the windows on that side. Fire fighters kicked out the rest of the windows to get hoses in.

After extinguishing the blaze, Plott investigated the scene but was unable to determine the cause of the fire. He testified that plaintiff's dog was not found in the garage. Plott testified that plaintiff arrived about 2:40 a.m. and spoke with him. He noticed that plaintiff "seemed very, very calm," but admitted that some fire victims react in a calm manner.

A number of defense witnesses testified to plaintiff's financial status. John Heffernan of General Finance Co. testified that plaintiff obtained a $2,412 loan on December 17, 1976, which matured December 17, 1979, with $1,175.28 owing on that date. Plaintiff did not pay this balance. Paul Anderson of the Old Second National Bank testified that plaintiff refinanced an auto loan with the bank on June 11, 1979, for $6,458.34. At the time of the fire, plaintiff was 2½ payments behind on his $153.77 monthly payments. Plaintiff had a business checking account at the bank with a $3.50 balance and a savings account with a $22.37 balance on December 24, 1979.

Other defense witnesses testified that plaintiff was two quarterly payments behind on his water bill with $56.09 outstanding and that he had been delinquent in paying his electric bill since August 1, 1979. Commonwealth Edison had received two partial payments since then, but plaintiff was still $201.70 in arrears. Several of plaintiff's creditors testified that his being in arrears and paying irregularly were not unusual for him.

Plaintiff testified under section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60) examination that he locked the doors and left his house "possibly" between 9:30 and 11 p.m. on January 2, 1980. He stated that his dog was in the garage at the time of his departure. He went from his home to either the Capricorn Lounge or Hugh Farrell's house. At some point in the evening he did go to Farrell's, though he was unsure of the time he arrived. Plaintiff testified that he went from Farrell's to Robert Carter's house at approximately 12:30 or 1 a.m. on January 3, 1980. He indicated that he stayed at Carter's approximately 1½ to two hours. Plaintiff stated that at that time he and Carter went out for cigarettes. He testified that they first drove to the Village Gas Station at Loucks and New York Streets, which was closed. They then went across the street to the Capricorn Lounge,

which was also closed. Next, they drove to the 7-Eleven store at Claim and Ohio Streets. He learned of the fire while at the 7-Eleven.

When asked by defense counsel whether he crossed Ohio Street on his route from the Capricorn Lounge to the 7-Eleven plaintiff responded "yes." However, he changed his testimony immediately stating that he did not cross Ohio Street because, if he had, he could have seen his house on the way. Plaintiff said the route he took was Kendall Street to Claim Street.

The evidence showed that from the time plaintiff left his home until the time he learned of the fire he was never more than a few minutes drive away from his house.

After learning of the fire, plaintiff went to his house and looked through it. He testified that nothing was missing at that time, though he did not check the closets.

Plaintiff testified that he had attempted to sell his house in 1978 and that a "For Sale" sign was in the window of his home at the time of the fire. Plaintiff testified his house was not for sale at the time of the fire and that he had never attempted to rent the house nor did he have a "For Rent" sign in the window.

He testified that he opened his business, Johnny's Beauty Box, in March or April 1979. At that time he had no other employment but "believed" he was receiving sick pay from his former employer. The sales tax returns for plaintiff's business showed no sales between May and September 1979. October sales were shown as $1,365. The October return also indicated plaintiff was ceasing business operations. Plaintiff denied investing $7,700 in this business and was impeached by his prior deposition, which indicated the investment of this sum.

Defense witness Emily Flores, a neighbor of plaintiff, testified that a "For Sale" and a "For Rent" sign were side by side in plaintiff's front porch window on the date of the fire.

Robert Jaske, a claims representative for defendant, testified that he learned of the fire on January 4, 1980. He went to the scene on that date and noticed "trailers" (burn patterns) "in the dining room extending into the living room area and toward the bedroom *** off the dining room."

Timothy Lynch, a fire investigator for Ron Russell and Associates, the company hired by defendant to investigate the fire, testified that he learned of the fire on January 4, 1980, and arrived at the scene on January 5, 1980. Upon his arrival, he observed that the house was not boarded up. He also noticed a heavy burn around the southside window. He took photographs to insure that the scene remained unchanged between January 5, 1980, and the next visit.

Defendant's witness Rita Ann Carroll, a fire investigator for Ron Russell and Associates, testified that she arrived at the scene on January 7, 1980, accompanied by Lynch. She determined that the south window area of the dining room was the point of origin for the fire. This determination was based on burn damage on the carpet and lower levels of the walls in the dining room and connecting portion of the living room. The other rooms had damage in higher areas indicating heat and smoke, rather than fire, damage. No burning had occurred in the basement stair area or in the bathroom.

She testified that most of the carpeting was relatively clean but that there were areas that were heavily burned. The burn damage in these areas of the carpet were in patterns that in her opinion were caused by a liquid accelerant being spilled and then ignited. These burn patterns were found on parts of the carpet in the dining room, from the dining room into the living room and in the part of the living room closest to the dining room. The rafter beneath the cold air return in the dining room floor was heavily charred. Carroll testified that while it was possible for a cold air return to draw fire down, it was more likely that this charring was caused by an accelerant being spilled on the floor.

She testified that she used a hydrocarbon detector on the carpet and walls where it appeared accelerants had been spilled to find areas to collect samples for laboratory analysis. The hydrocarbon detector draws vapors from an area and indicates whether hydrocarbons are present. Samples were collected from areas indicated by the detector. These samples were sent to Davis Chemical Company for analysis.

Based on her training and experience Carroll gave her opinion that within a reasonable degree of scientific certainty the fire started from some type of accelerant being spilled and ignited. She also testified that it would be very difficult, after the fire, to have moved the debris, placed the accelerants, lit them, and then replaced the debris.

Dr. David Dunham testified that he was the chemist employed by Davis Chemical Company who analyzed the samples collected by Carroll. He tested these samples in a gas chromatograph which separates and identifies the components of a complex mixture. The chromatograph used here had a flame ionization detector which "is particularly sensitive to hydrocarbon content *** such as one might find in lighter fluid or gasoline or a variety of other compounds." The tests consisted of drawing air from the sample container, injecting it into the chromatograph and observing a graph which showed the detector's determination of the length of time (retention time) the components were retained in the chromatograph. The retention time was then in-

terpreted by Dr. Dunham to identify the component present in the sample. Identification is achieved by comparing the test results with the results of tests run on known compounds.

Dr. Dunham tested the samples numbered 2, 4, 5, 8, 9, and 12. Sample No. 12 corresponded to hydrocarbons containing eight to 10 carbon atoms. This is similar to the major components of diesel fuel, home heating oil and charcoal lighter fluid. A lot of hydrocarbons were present and he testified that the sample would burn easily. Sample No. 4 was about 20-25% the concentration of No. 12. It corresponded to compounds containing seven or eight carbon atoms. Charcoal lighter fluid and home heating oil have those compounds.

He could not reach definite conclusions as to the other four samples. However, he stated that sample No. 2 had some correspondence to gasoline compounds and that sample No. 5 had a high likelihood that it was the same compound as No. 4. He could not reach any conclusion as to sample No. 8 or sample No. 9.

He stated the compounds that were identified dissipate slowly and would be relatively unchanged from January 3 to January 7 or even for several months. He testified that the components he identified in these samples would not be found in rugs, furniture or clothing.

Defense witness Alan Hracek, a private investigator hired by defendant, testified that based on distance calculations his opinion was that the most direct route from the Capricorn Lounge to the 7-Eleven store was New York to Ohio Street and then Ohio Street to Claim Street.

Plaintiff called several witnesses in rebuttal. Charles Ferrari testified that plaintiff opened an account and deposited $4,543.31 on December 18, 1979, at the First Security Bank of Fox Valley. On the date of the fire, the account balance was $1,118.55. Hugh Farrell testified that plaintiff visited him at his home on the night in question but did not know when plaintiff arrived or when he left. Robert Carter testified that plaintiff came to his house about 1 a.m. He stated that he and plaintiff had some drinks and then went to the Carpricorn Lounge for cigarettes a little after 1 a.m. Because it was closed they went to the 7-Eleven.

Over plaintiff's objection, Carter was cross-examined about not appearing at a scheduled deposition and about cashing a subpoena fee check. This check bore plaintiff's endorsement as well as Carter's. Plaintiff later during rebuttal testified that he had cashed the check for Carter.

State Fire Marshall arson investigator Donald Hollanger testified for plaintiff on rebuttal that he was called by the Aurora fire depart-

ment to investigate the fire. He arrived about noon on January 3, 1980, and declined to investigate because the building had not been secured since the time of the fire. He concluded that this lack of security precluded gathering evidence for a criminal prosecution. He also testified that for a person to have placed accelerants after a fire would require the moving of debris in order for it to look natural.

During rebuttal plaintiff sought to introduce evidence of repairs he had begun on the house two months after the fire and evidence that be began receiving unemployment compensation in March 1980. The court refused to allow this evidence to be introduced.

■ Plaintiff first contends that the jury verdict was against the manifest weight of the evidence due to inadequate circumstantial evidence connecting plaintiff to the fire's origin. The party who asserts an affirmative defense has the burden of proving it. (*Pascal P. Paddock, Inc. v. Glennon* (1964), 32 Ill. 2d 51, 54, 203 N.E.2d 421; *Capitol Plumbing & Heating Supply, Inc. v. Van's Plumbing & Heating* (1978), 58 Ill. App. 3d 173, 175, 373 N.E.2d 1089.) Thus, defendant has the burden of proving plaintiff was guilty of misconduct in the origin of the fire in order to prevail on that branch of its affirmative defense and thereby defeat plaintiff's claim to recovery under the policy.

Where a crime such as arson is an issue in a civil action it need only be proved by a preponderance of the evidence rather than beyond a reasonable doubt. (*Sundquist v. Hardware Mutual Fire Insurance Co.* (1939), 371 Ill. 360, 365, 21 N.E.2d 297; *Werner's Furniture, Inc. v. Commercial Union Insurance Co.* (1976), 39 Ill. App. 3d 59, 65, 349 N.E.2d 616.) Thus, our inquiry is whether it was against the manifest weight of the evidence for the jury to find that the preponderance of the evidence showed plaintiff was guilty of misconduct in the origin of the fire. See *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447.

In order to prevail plaintiff and defendant agree that defendant must prove (1) that the fire was of an incendiary nature and (2) that plaintiff caused or procured the fire. (*Werner's Furniture, Inc. v. Commercial Union Insurance Co.* (1976), 39 Ill. App. 3d 59, 65, 349 N.E.2d 616.) They also agree that motive and opportunity for starting the fire, as well as the identity of the person starting the fire, may be proven by circumstantial evidence. (*Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill. App. 2d 229, 239, 202 N.E.2d 688; see also *People v. Brown* (1982), 104 Ill. App. 3d 1110, 1117, 433 N.E.2d 1081.) "Circumstantial evidence is the proof of certain facts and circumstances *** from which the jury may infer other

connected facts which usually and reasonably follow according to the common experience of mankind." *Devine v. Delano* (1916), 272 Ill. 166, 179-80, 111 N.E. 742; see also *People v. Rhodes* (1981), 85 Ill. 2d 241, 248-49, 422 N.E.2d 605.

The key to deciding whether the circumstantial evidence was adequate to sustain the jury's verdict is the question whether from the circumstantial evidence presented the jury properly could draw the inference that plaintiff caused or procured the fire.

Plaintiff urges that the circumstantial evidence must be of such a nature that only one possible inference may be drawn from it. He contends that if more than one inference may be drawn from the circumstantial evidence, then the evidence cannot be used to support any inference.

Defendant argues that the circumstantial evidence must reasonably permit a particular inference to be drawn by the trier of fact. If it does, then, defendant argues, the fact that a contrary inference could be drawn from the circumstantial evidence does not defeat the inference drawn by the trier of fact.

Language in some cases might seem to support plaintiff's argument: (*Werner's Furniture, Inc. v. Commercial Union Insurance Co.* (1976), 39 Ill. App. 3d 59, 349 N.E.2d 616; *Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill. App. 2d 229, 202 N.E.2d 688.) However, we believe the proper approach is set forth in *Hocker v. O'Klock* (1959), 16 Ill. 2d 414, 158 N.E.2d 7.

In *Hocker*, our supreme court, in recognizing that a fact may be established by circumstantial evidence, quoted from *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 134-35, 94 N.E.2d 847, as follows:

" 'The inquiry here is whether the result reached below was one which is reasonable on the facts in evidence, not whether other conclusions might also have been reached. \*\*\* A verdict may not be set aside merely because the jury could have drawn different inferences or because judges feel that other conclusions than the one drawn would be more reasonable.' " (16 Ill. 2d 414, 420-21, 158 N.E.2d 7.)

See also *Nagel-Taylor Automotive Supplies, Inc. v. Aetna Casualty & Surety Co.* (1980), 81 Ill. App. 3d 607, 402 N.E.2d 302.

■ We hold that the circumstantial evidence in this case was adequate to sustain the inference that plaintiff was guilty of misconduct in the origin of the fire in his home. Thus, the jury's verdict was not against the manifest weight of the evidence.

The testimony showed that the fire was of an incendiary nature. Defendant's fire investigator's testimony was that accelerant burn

patterns were found in the dining room, from the dining room into the living room, and in the living room. Her opinion was that the fire started from spilled accelerants. This was corroborated by Dr. Dunham's analysis of samples collected from these areas. This analysis showed the existence of hydrocarbon compounds not normally found in household furnishings, but found in diesel fuel, home heating oil, and charcoal lighter fluid. There is an absence of a motive for a third party to enter the house and set the fire in the method described.

The testimony also showed that plaintiff was in a precarious cash position which had been steadily deteriorating for several months. It showed his business had not been successful, that he had no other source of income, and that he was behind in his bills and loan payments, all of which tend to establish a motive to set the fire in order to collect the insurance proceeds. By his own admission plaintiff was in the vicinity of his home at the time of the fire. His travels that evening and the routes that he took near his home were factors to be considered. Any bias interest or prejudice of the witnesses who testified to plaintiff's whereabouts that evening were proper considerations for the jury. The evidence showed that plaintiff said his dog was in the garage yet fire fighters did not find the dog. The evidence further showed the doors were locked that evening by plaintiff and remained locked until forced open by the fire fighters. The jury could infer from this fact that no third party entered the premises. This inference is further supported by plaintiff's testimony that he inspected the premises on the night of the fire and determined that nothing was missing. Moreover, plaintiff reacted in a "very, very calm" manner when he arrived at the fire scene. This was another fact the jury could consider in drawing the inference that plaintiff was responsible for causing the fire.

Viewing all the evidence, we believe the jury could reasonably infer that plaintiff was guilty of misconduct in the origin of the fire. Thus, the jury's verdict was not against the manifest weight of the evidence and therefore cannot be reversed. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447.

Plaintiff also contends that defendant failed to prove the affirmative defense of plaintiff's false swearing. We need not reach this issue because of our decision that the jury verdict on misconduct was not against the manifest weight of the evidence. Where a general verdict has been rendered for defendant and at least one count is sufficient to sustain the general verdict it will not be set aside even if another count is defective. (Ill. Rev. Stat. 1979, ch. 110, par. 68(4);

*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 431, 412 N.E.2d 447.) Thus, even if the false swearing defense were inadequately proven, the verdict for defendant would still stand.

Plaintiff argues that the court erred in admitting evidence of the presence of accelerants in plaintiff's home four days after the fire without proof that the premises were in the same condition at the time of the fire as when the accelerants were found. However, plaintiff failed to specifically object to the introduction of this evidence in a timely manner. Failure to make a timely objection waives the objection and it cannot later be raised on appeal. (*Brumley v. Federal Barge Lines, Inc.* (1979), 78 Ill. App. 3d 799, 806, 396 N.E.2d 1333; *Bosel v. Marriott Corp.* (1978), 65 Ill. App. 3d 649, 653-54, 382 N.E.2d 587.) The record indicates plaintiffs objected only to Carroll's competence to render an opinion that the fire was started by a "person or persons unknown." At trial, counsel mentioned in passing that the foundation for her testimony as to the accelerants is improper because of the delay but stated "at this stage I'm arguing this one." No other mention is made of the objection based on delay and the court never ruled on it. It is well established that an objection must specify the grounds for the objection and no grounds other than those stated will be considered on appeal. (*Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 179, 399 N.E.2d 606.) Thus, plaintiff waived this objection.

■ Even if we were to consider plaintiff's argument, we would not find error. Whether to admit evidence or not is within the sound discretion of the trial court and the trial court's decision will not be reversed absent a clear abuse of discretion. (*Country Mutual Insurance Co. v. Adams* (1980), 85 Ill. App. 3d 501, 506, 407 N.E.2d 103.) When testimony is given based on an inspection, evidence must be introduced to show that the conditions were essentially the same at the time of the inspection as they were at the time of the event. (*Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 778, 416 N.E.2d 303; *Neubauer v. Coca Cola Bottling Co.* (1968), 96 Ill. App. 2d 18, 28, 238 N.E.2d 437.) Fire investigator Carroll testified that she removed debris in order to inspect the burn patterns on the carpet. She indicated it would be very difficult to have placed the accelerants after the fire since this would have required moving debris, placing the accelerants, lighting them, and then replacing the debris in a natural looking way. State Fire Marshall's investigator Hollanger agreed that debris would need to be moved in order to place accelerants after the fire. This evidence was sufficient to show that the conditions were essentially the same at the time of the inspection as they were at the

time of the fire. Thus, the trial court did not clearly abuse its discretion in admitting evidence of the presence of accelerants.

■■ Plaintiff argues that the trial court improperly excluded evidence that plaintiff became eligible for unemployment compensation in March 1980; some two months after the fire. He argues this evidence was relevant to rebut the inference created by the defendant that he was not in a good financial condition. At the time introduction of this evidence was sought by plaintiff, his counsel requested permission to put plaintiff back on the stand to ask him about repairs to the premises subsequent to the fire and to testify that "he was in a position where he was drawing unemployment compensation starting in March of 1980 and that he drew it for approximately six months." The arguments before the trial court focused almost exclusively on the propriety of introducing the evidence of post-occurrence repairs. This evidence was excluded and its exclusion is not raised as error on appeal. Only after denying the evidence of post-occurrence repairs did plaintiff's counsel seek a ruling on the unemployment compensation evidence which was also excluded on the basis that it occurred after the fire "unless there is something that needs a tie-in." On this record, plaintiff, in seeking introduction of this evidence, has not demonstrated when, in relation to the date of the fire, he knew he would draw unemployment compensation. It was necessary for a determination of the relevancy of this evidence, whether plaintiff, at the time of the fire, knew he would receive unemployment compensation. If plaintiff knew at the time of the fire he would receive this benefit, the evidence may have been relevant to his financial condition. However, we cannot make this factual determination from the limited arguments of counsel before the trial court. Thus, plaintiff waived this issue by failing to make an adequate offer of proof.

An offer of proof is necessary to preserve a question for review where the trial court excludes the testimony of a witness on a particular matter. (*Federal Mutual Insurance Co. v. Pense* (1980), 84 Ill. App. 3d 313, 318, 405 N.E.2d 368.) An offer of proof may remove an ambiguity as to the admissibility of the proferred testimony. (*Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.* (1975), 61 Ill. 2d 6, 17, 329 N.E.2d 228.) Here, plaintiff failed to offer necessary facts to the court to support the admissibility of this evidence.

■■ Plaintiff also argues that the trial court allowed plaintiff's witness, Robert Carter, to be improperly impeached by allowing his cross-examination concerning a check issued to Carter bearing plaintiff's endorsement as well as Carter's. Plaintiff argues he was severely prejudiced by the impeachment of Carter regarding the en-

dorsements on the subpoena fee check issued by defendant to Carter. Plaintiff contends that the jury's learning that his endorsement appeared on the check was damaging to his case. Defendant offered the evidence of Carter's failure to appear for the deposition, and his cashing the check, to show bias in favor of plaintiff. Plaintiff argues that his friendship with Carter was conceded so the evidence was unnecessary for impeachment and served to unfairly prejudice him.

A trial court has broad discretion in controlling cross-examination and reversal will result only where such discretion had been clearly abused and the abuse materially affected the results of the trial. (*Chiesa v. Laspisa* (1980), 90 Ill. App. 3d 911, 919, 414 N.E.2d 47; *Papageorgiou v. F.W. Woolworth Co.* (1978), 66 Ill. App. 3d 873, 881-82, 383 N.E.2d 1346.) We cannot say that this inquiry constituted an abuse of that discretion. Further, plaintiff testified in rebuttal that he had cashed the check for Carter merely because Carter did not have time to go to the bank. Given plaintiff's exercise of this opportunity to explain, it cannot be said that the introduction of this check, even if it were error, would have materially affected the outcome of the trial.

Plaintiff also contends that the court erred in allowing defendant's investigator Hracek to testify to the most direct route between the Capricorn Lounge and the 7-Eleven store at Claim Street and Ohio Street in Aurora, Illinois. The thrust of plaintiff's argument on appeal is that the foundation for Hracek's opinion testimony on the most direct route in Aurora was inadequate.

■ Whether a witness is qualified to testify as an expert is within the sound discretion of the trial court. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 250, 302 N.E.2d 257; *McClure v. Suter* (1978), 63 Ill. App. 3d 378, 384, 379 N.E.2d 1376.) The current trend is to allow expert testimony if it will assist the trier of fact in understanding the evidence even though the average juror would also have some knowledge of the subject matter. (*Binge v. J.J. Borders Construction Co.* (1981), 95 Ill. App. 3d 238, 242, 419 N.E.2d 1237; E. Cleary and M. Graham, Handbook of Illinois Evidence sec. 702.4 (3d ed. 1979).) Here, Hracek's testimony established that he had considerable experience as an investigator for several municipalities, had familiarized himself with the streets in Aurora, and calculated the distance between plaintiff's house and Farrell's, between Farrell's house and Carter's, between Carter's house and the Capricorn Lounge, between the Capricorn Lounge and the 7-Eleven store, and between the intersection of Ohio Street and Fenton Street and plaintiff's house. From this he was able to give his opinion of the most direct route.

414

Since this opinion could be helpful to the jury the trial court did not abuse its discretion in allowing Hracek to give it.

Even if we were to hold that Hracek's testimony was erroneously admitted, the error is not prejudicial to plaintiff's case. Plaintiff has not met his burden of showing that this evidence affected the result in the trial court. Absent such a showing, the error does not require reversal. *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 86, 392 N.E.2d 628; see *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1019, 388 N.E.2d 770.

Plaintiff's other contentions on appeal rest on a determination favorable to plaintiff on one of the above issues. Since we hold against plaintiff on those issues, we need not address his other arguments.

Affirmed.

SEIDENFELD, P.J., and HOPF, J., concur.