VILLAGE VIEW RESTAURANT, INC., Plaintiff-Appellee, v. AETNA LIFE AND CASUALTY COMPANY, Defendant-Appellant.

First District (5th Division)    No. 85—2653

Opinion filed September 30, 1987.

Thomas J. Doell, of Galliani and Doell, Ltd., of Chicago, for appellant.

John M. Mack, of Holstein, Mack & Associates, of Chicago (Susan P. Malone, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial judgment was entered for Village View Restaurant, Inc., on its claim against its insurer, Aetna Life and Casualty Company, for losses arising from a fire on Village View's premises. On appeal Aetna contends: (1) a judgment *n.o.v.* should have been entered in Aetna's favor because Village View failed to comply with a policy requirement that a sworn proof of loss be submitted within 60 days of the loss; (2) the trial court erred in striking Aetna's affirmative defense alleging arson by or at the direction of the insured; (3) the court also erroneously struck a second affirmative defense alleging false swearing and fraud in a "Provisional Proof of Loss" furnished on behalf of the insured to Aetna; (4) the court erred in barring the testimony of a defense witness whose name was not on defendant's pretrial list of possible witnesses; (5) prejudgment interest should not have been awarded to Village View.

We reverse and remand for a new trial.

The pertinent trial evidence established the following. Andrew Visvardis purchased Village View Restaurant in May 1976, becoming the sole stockholder of Village View Restaurant, Inc. He had been operating a painting contracting business, Andy's Paint Company, and had no restaurant experience. Visvardis made a cash down payment of $45,000, including $18,000 borrowed from a bank. He signed a note for the remaining balance of approximately $57,000, to be repaid in monthly installments of $1,100 per month for five years. The purchase price did not include the building, for which Visvardis entered into a 15-year lease with the building owner at the rate of $1,350 per month. In addition to these expenses Visvardis employed approximately 12 people at the restaurant.

Visvardis testified that during the period from May until the fire on November 25, 1976, business was "fair," meaning he could pay his bills and salaries. However, during this period he apparently only made interest payments on the $18,000 note, renewing that note every three months without repaying any of the principal. In 1973, 1974, and 1975, Visvardis testified that he made money from his painting company. His 1976 tax return, however, showed a net loss for Andy's of almost $3,000 and also showed no other source of income for him. His 1977 tax return showed a $20,000 profit for Andy's.

The fire occurred on Thanksgiving Day, November 25, 1976, when the restaurant was closed. The evidence at trial clearly established that the fire was caused by arson, a fact not disputed by Village View on appeal. Minutes before the fire a false alarm was telephoned to the fire station located one-half block from the restaurant, diverting firemen to a location across town. A fire department investigator, James Kolb, found at least four and possibly five separate areas of set fires in the building. Laboratory analysis of samples taken from the building showed the presence of material similar to Coleman fluid, a gasoline product. Kolb and two other firefighters all testified that they found no sign of forced entry to the building other than one rear door forced open by firefighters.

Andrew Visvardis testified that he locked the restaurant the evening before the fire. He gave conflicting testimony on whether he checked all the doors. There were two other keys to the restaurant. One was kept in the register, and the other was kept by the cook, John Kladis. On the day of the fire Visvardis entered the restaurant for five minutes "before lunchtime" to get some cigarettes. At that time he noted that the spare key was still in the register. From about 5 or 6 p.m. on he was at his Oak Lawn residence, a five-minute drive from the restaurant. At 8 p.m. he was notified of the fire.

According to Visvardis he had no enemies and no one had ever threatened to harm him or his property. John Kladis, who had the only other key, was a "nice guy" making "pretty good money" as the cook. All his employees had been paid.

Also introduced at trial was considerable conflicting evidence concerning Village View's losses from the fire. The restaurant itself was not reopened by Visvardis and after four or five months his lease was cancelled.

Public adjuster Harry Sommerfield was hired by Visvardis to represent Village View in its claims to Aetna. Aetna required that a proof of loss be submitted within 60 days of the loss. Because he did

not have all the figures available Sommerfield submitted, on January 20, 1977, a document entitled "Provisional Proof of Loss," signed by Visvardis and notarized. Included in that document was the statement that Visvardis had no knowledge of the source of the fire. On February 7, 1977, Aetna sent Sommerfield a letter stating that the policy did not provide for a "provisional" proof of loss. Sommerfield was informed that Aetna would either accept the document as a proof of loss or, if he so requested, would return it to him. Sommerfield did not respond to that portion of the letter. In the provisional proof of loss and supporting documentation Village View claimed contents damage of $85,351.48 and loss of earnings of $47,280.20.

At the close of all the evidence the trial court directed a verdict against Aetna on its affirmative defenses, which alleged that the insured filed a false and fraudulent proof of loss and that the fire was set by and at the direction of the plaintiff. The matter was then submitted to the jury. Village View had sought $85,000 for loss of contents and $45,000 for loss of earnings. The jury returned a verdict for Village View of $40,113.66 for contents and $0 for loss of earnings. Subsequently, the court granted Village View prejudgment interest at the rate of 5% from the date the policy provided for payment, 60 days after the proof of loss was submitted, until the date of judgment.

1

■ We find no merit to Aetna's contention that judgment *n.o.v.* should have been entered for Aetna. Aetna apparently bases this contention on the disparity between the damages claimed by Village View in the provisional proof of loss and those actually awarded by the jury. Aetna then contends that the jury's failure to validate all of the losses claimed in that document somehow invalidated it, so that Village View had failed to comply with the policy requirement that the document be filed. Aetna has cited no case in support of this proposition and we do not find that judgment *n.o.v.* should have been granted to Aetna.

2

■ We next consider Aetna's contention that the trial court erred in directing a verdict for Village View on Aetna's affirmative defense alleging arson by or at the direction of the insured.

A judgment *n.o.v.* is to be entered only when all the evidence, viewed in the light most favorable to the opponent, favors the movant so overwhelmingly that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.)

In this cause it is undisputed that there was overwhelming evidence that the Village View fire was caused by arson. We also find that there was ample evidence from which the jury could have concluded that this arson was caused by James Visvardis. There was evidence that Visvardis was suffering financial harm because of the restaurant venture. His formerly profitable painting business began to lose money while his restaurant did not make any. He had incurred long-term debts of $75,000 in addition to the monthly restaurant rental of $1,350. The year after the fire, now out of the restaurant business, Visvardis reported a $20,000 profit on his painting business. In addition to this evidence of motive there was also evidence of opportunity. Visvardis was the last reported person at the restaurant. At the time the fire occurred he was only five minutes away. In addition to a cook with no apparent motive for arson, Visvardis was the only person established to have a key to the premises. Firemen on the scene found no evidence of forced entry to the restaurant; they had to break into the building themselves to fight the fire.

■■ Similar facts have previously been held sufficient to establish arson. (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 444 N.E.2d 220.) In *Moore* the plaintiff sought recovery for fire damage to his home under a homeowner's policy. A verdict was returned for the insurance company based, *inter alia*, on the affirmative defense that plaintiff caused the fire. In finding the circumstantial evidence sufficient to support the inference that plaintiff did cause the fire the court noted evidence that: the fire was caused by arson; plaintiff was in a deteriorating cash position; plaintiff was in the vicinity of his home at the time of the fire; there was no evidence of forced entry to the home; and no motive was established for any third party to have set the fire. Clearly under the similar facts of this case the trial court erred in finding that the jury could not have found arson by the plaintiff.

■ In directing a verdict against Aetna on this issue, the court also instructed the jury:

"[T]his Court has now determined as a matter of law that the defendant has not proved *** that plaintiff set or caused to be set the fire in question."

Because this determination of James Visvardis' credibility on one of the fundamental issues in the case inevitably may have affected the jury's evaluation of his credibility on the question of damages, we reverse the entire cause rather than merely reversing on the issue of liability.

Aetna's remaining contentions need not be addressed because of

36

our resolution of this issue. Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded for a new trial.

PINCHAM and MURRAY, JJ., concur.